UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SIDNEY MERRIWEATHER, *et al.*, *Plaintiffs,* | ) | |
| *vs.* | ) | 2:09-cv-0328-JMS-WGH |
| SOUTHWEST RESEARCH INSTITUTE, *Defendant.* | ) | |

**ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY COLLECTIVE ACTION**

In October 2009, Plaintiffs filed a Complaint asserting, in relevant part, claims against Defendant Southwest Research Institute ("SRI") for failing to pay wages in violation of the Fair Labor Standards Act ("FLSA") and the Indiana Wage Payment Act ("IWPA"). [Dkt. 2 at 15 ¶¶ 82-91 (Count I), 17 ¶¶ 101-106 (Count III).] Presently before the Court is Plaintiffs' Motion to Certify Collective Action ("Motion to Certify") on these claims. [Dkt. 42.]

**BACKGROUND**[1]

Plaintiffs were hourly-paid employees of SRI at the Newport Chemical Agent Disposal Facility ("NECDF") in Newport, Indiana. SRI was a subcontractor of Parsons Technical Support, Inc. ("Parsons") and was responsible for monitoring the air quality at NECDF to test for the presence of the chemical warfare agent being neutralized.

**A. Plaintiffs' Pre-Shift Allegations**

SRI required employees inside a chemical limited area (known as the double-fence area) to have a mask carrier containing an air-purifying safety mask with them at all times. Upon arriving at the NECDF, Plaintiffs went to a mask trailer located outside the double-fence area to

[1] SRI disputes various aspects of the Plaintiffs' allegations and cites deposition testimony from the putative class members as support. The Court will address the contradictory deposition testimony in the discussion section of this Order.

pick up their mask carriers. After donning their mask carriers, Plaintiffs went to the Entry Control Facility ("ECF") to be processed by security. Plaintiffs were required to change into clothing provided by SRI after entering the double-fence area.

Plaintiffs allege that donning the mask carrier, ECF processing, and changing into work clothes generally took fifteen to thirty minutes. [*See, e.g.*, dkts. 43-11 at 5 ¶ 20 (twenty minutes); 43-13 at 5 ¶ 20 (fifteen to twenty minutes); 43-14 at 5 ¶ 20 (thirty minutes).] Plaintiffs allege that they were instructed not to record this time on their time cards. [*See, e.g.*, dkts. 43-11 at 6 ¶¶ 21-23; 43-13 at 6 ¶¶ 21-23; 43-14 at 6 ¶¶ 21-23.]

**B. Plaintiffs' Meal Period Allegations**

SRI deducted thirty minutes of pay each day for time designated for meals. Plaintiffs allege, however, that they were required to be on call during meal breaks, were not allowed to leave the double-fence area, and were consistently interrupted by supervisors and other employees with work-related issues. [*See, e.g.*, dkts. 43-11 at 6-7 ¶¶ 24-32; 43-13 at 6-7 ¶¶ 24-32; 43-14 at 6-7 ¶¶ 24-32.]

**C. Plaintiffs' Post-Shift Allegations**

Plaintiffs allege that they engaged in shift turnovers, changed back into street clothes, processed out at the ECF, and returned their mask carriers to the mask trailer before leaving the NECDF. Plaintiffs allege that they were not allowed to leave their work area until at or near the end of their shift, and after completing these activities, they did not leave the mask trailer until between five and fifteen minutes after their shifts ended. [*See, e.g.*, dkts. 43-11 at 8 ¶¶ 37-38 (left mask trailer ten to fifteen minutes after shift); 43-13 at 8 ¶¶ 37-38 (left mask trailer ten to fifteen minutes after shift); 43-14 at 8 ¶¶ 37-38 (left mask trailer five to fifteen minutes after shift).]

## Discussion

### I. Collective Action Certification Standards

The FLSA provides that an action for unpaid overtime compensation may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A collective action differs significantly from a class action brought pursuant to Federal Rule of Civil Procedure 23. *Moss v. Putnam County Hosp.*, 2010 U.S. Dist. LEXIS 74735 *4 (S.D. Ind. July 21, 2010). The primary difference is that plaintiffs who wish to be included in a collective action must affirmatively opt in by filing a written consent with the Court, while members of a Rule 23 action are automatically included unless they affirmatively opt out. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Rule 23 and its standards governing class certifications do not apply to a collective action brought under the FLSA. *Moss*, 2010 U.S. Dist. LEXIS 74735 at *5.

An employee may only bring an action on behalf of other employees who are similarly situated. 29 U.S.C. § 216(b). Therefore, to decide whether to initially certify a collective action, the Court must determine whether members of the proposed class are, in fact, similarly situated. *Campbell v. Advantage Sales & Mktg., LLC*, 2010 U.S. Dist. LEXIS 87077 *10 (S.D. Ind. Aug. 24, 2010). Neither the United States Supreme Court nor the Seventh Circuit Court of Appeals has provided specific guidance on when certification is appropriate, but district courts within this Circuit typically use a two-step inquiry. *Lallathin v. Ro Ro, Inc.*, 2010 U.S. Dist. LEXIS 64096 *2 (S.D. Ind. June 28, 2010); *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 604 (W.D. Wis. 2006).

The first step, also known as the notice stage, involves the analysis of the pleadings and affidavits that have been submitted to determine whether notice should be given to potential class members. *Campbell*, 2010 U.S. Dist. LEXIS 87077 at *9. Although the first step of certification

does not impose a high burden on the plaintiff, "this does not mean that the modest factual showing is a mere formality." *Id.* at *11. It serves as an important and functional step in the certification process because "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair v. Wis. Bell, Inc.*, 2008 U.S. Dist. LEXIS 68942, *9-*10 (E.D. Wis. Sept. 11, 2008) (citation omitted).

The second step of certification occurs after discovery has largely been completed and allows a defendant the opportunity to seek decertification of the class or restrict the class because various putative class members are not, in fact, similarly situated as required by the FLSA. *Id*. at *9. Under this more stringent inquiry, courts typically consider three factors: (1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns. *Threatt v. CRF First Choice, Inc.*, 2006 U.S. Dist. LEXIS 50934, *19 (N.D. Ind. July 21, 2006).

The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs. *Raymer v. Mollenhauer*, 2010 U.S. Dist. LEXIS 84273 *3 (S.D. Ind. Aug. 16, 2010). Courts have held, however, that being similarly situated does not require identical positions of the putative class members; instead, it requires that common questions predominate among the members of the class. *Campbell*, 2010 U.S. Dist. LEXIS 87077 at *10; *Alvarez*, 605 F.3d at 449.

**II. Federal Overtime Claim (Count I)**

The parties dispute whether Plaintiffs are similarly situated to the individuals they seek to represent and whether Plaintiffs have made the modest factual showing required to initially certify a collective action. Plaintiffs rely heavily on the declarations they submitted with their Mo-

tion to support their assertion that they are similarly situated to the putative class members. [Dkt. 43 at 3-16 (citing dkts. 43-2 to 43-17).] In response, SRI meticulously details significant discrepancies between the "boilerplate declarations" and subsequent deposition testimony of the declarants.[2] [Dkt. 61 at 8-19.]

For example, two deponents candidly admitted that their declarations contained inaccuracies. Kelly Lewis (a named Plaintiff) admitted that he only "skimmed through" his declaration before signing it and that it contained significant inaccuracies. [Dkt. 61-3 at 13-14 (testifying that he did not engage in shift turnovers and did not shower or change after his shifts, despite his declaration to the contrary).] Another SRI employee admitted after being questioned about various portions of the declaration that "it's inaccurate, correct." [Dkt. 61-5 at 12 (testifying that he was not required to take meal breaks in designated lunchroom, did not engage in shift turnovers, and did not shower and change clothes at the end of his shifts, despite his declaration to the contrary).] As SRI details at length in its opposition to the Motion to Certify, the deposition testimony contradicts statements in the declarations regarding the amount of time spent processing through ECF, the existence of and payment for shift turnover meetings, the existence of and payment for changing clothes after work, restrictions during meal periods, and the frequency of interruptions during meal periods. [Dkt. 61 at 8-18.]

Plaintiffs argue in reply that discrepancies between the declarations and the deposition testimony "are immaterial and/or go to the credibility of the witnesses and thus are not properly considered at the conditional certificat[ion] state." [Dkt. 69 at 1.] Plaintiffs make no effort to explain the discrepancies and, instead, argue that inconsistencies render the differences "irrele-

[2] SRI took depositions of six employees, including the three named Plaintiffs. [*See* dkts. 61-2 to 61-7 (deposition excerpts submitted in opposition to Motion to Certify).] SRI attempted to take more depositions, but at least six opt-in plaintiffs did not appear as scheduled. [Dkt. 61 at 8 n.2.]

vant." [*See* dkt. 69 at 1-2 n.1 ("Defendant also argues that shift turnover took place after the commencement of the official shift, which appears from the depositions to be correct. This renders differences in shift turnover irrelevant, since employees were compensated once the official shift began."]

A district court has wide discretion to manage collective actions. *Alvarez*, 605 F.3d at 449. Although the Court agrees with Plaintiffs that it cannot evaluate the merits of their claim at the certification stage, *Coan v. Nightingale Home Healthcare, Inc.*, 2005 U.S. Dist. LEXIS 15475 *3 (S.D. Ind. June 29, 2005), the Court disagrees that this requires it to ignore substantive contradictions of the class members' own sworn testimony. Here, putative class members' depositions contradicted their sworn declarations submitted to this Court. These contradictions undermine the proof submitted by Plaintiffs to meet the requisite showing for collective action certification. Rather than resolving factual disputes on the merits between opposing parties at this time, the Court instead is engaged in a proper function—the evaluation of the evidence submitted by Plaintiffs to meet their burden. Requiring the Court to figuratively stick its head in the sand would defeat the purpose of certification, which is to ensure that Plaintiffs are similarly situated to the putative class members. *See Campbell*, 2010 U.S. Dist. LEXIS 87077 at *11 (reinforcing that although the first step does not impose a high burden on the plaintiff, "this does not mean that the modest factual showing is a mere formality"); *Adair*, 2008 U.S. Dist. LEXIS 68942 at *9-*10 (emphasizing the importance of plaintiff's burden because "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated").

For these reasons, the Court, in its discretion, concludes that Plaintiffs have not made the showing necessary for collective action certification.[3] Because the Court denies Plaintiffs' request to certify the federal overtime claim, it denies Plaintiffs' request to approve the proposed notice. [Dkt. 43 at 21.] The named Plaintiffs can proceed with their individual claims against SRI, but their Motion to Certify is denied with respect to the federal overtime claim.

**III. State Claim for Unpaid Wages (Count III)**

Plaintiffs' Complaint also asserts a state law claim for unpaid wages under the IWPA. [Dkt. 2 at ¶¶ 101-106.] In its Motion to Certify, Plaintiffs argue that the IWPA "is compatible" with the FLSA and abruptly conclude that "Indiana law requires the identical similarly situated standard for class action as the FLSA . . . ." [Dkt. 43 at 21.] SRI argues that Plaintiffs cannot pursue the state law wage claim as a collective action and, instead, must either bring that claim individually or move to certify it as a Rule 23 class action. [Dkt. 61 at 23-24.] Plaintiffs ignore this portion of SRI's argument in their seventeen-page reply brief. [Dkt. 69.] Plaintiffs' silence is conspicuous, considering that they acknowledge in their Complaint that their state law claims may "be maintained as a Class Action under Rule 23 of the Federal Rules of Civil Procedure . . . ." [Dkt. 2 at 13 ¶ 75.]

The Court agrees with SRI that a state law claim under the IWPA would be governed by Rule 23 as a class action, not as a collective action. *See Boyd v. Jupiter Aluminum Corp.*, 2006 U.S. Dist. LEXIS 35654 *19 (N.D. Ind. May 31, 2006) ("state law claim under the Indiana Wage

---

[3] The Court recognizes that this may initially seem inconsistent with *Phelps v. Parsons Technical Support, Inc.*, No. 2:09-cv-0327-JMS-WGH, [dkt. 128] (S.D. Ind. Oct. 29, 2010), in which the Court certified a narrow collective action concerning similar claims against SRI's general contractor, Parsons. The Court, however, must independently analyze the facts of each case. *Soo L. R.R. Co. v. Overton*, 1991 U.S. Dist. LEXIS 21014 (S.D. Ind. 1991). Although the plaintiffs in *Phelps* submitted similar affidavits to the Plaintiffs herein, Parsons did not submit deposition evidence directly undercutting the plaintiffs' own sworn statements.

Payment Act . . . if certified as class action, would be governed by Federal Rule of Civil Procedure 23"). Plaintiffs have not moved to certify a class for their state wage claim under Rule 23 and have not argued that they satisfy the requirements of Rule 23(a) and fall within at least one of the categories identified in Rule 23(b). *See Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) ("Failure to meet any of [Rule 23's] requirements precludes class certification."). Because Plaintiffs' state wage claim must be brought as a class action under Rule 23 and Plaintiffs have incorrectly asserted a proposed collective action as the means of class treatment, the Court will not certify a class on Plaintiffs' state wage claim.

## CONCLUSION

For the reasons detailed in this Order, this Court **DENIES** Plaintiffs' Motion to Certify Collective Action. [Dkt. 42.] The individual claims of Plaintiffs Sidney Merriweather, Kelly Lewis, and Charles Perdieu may proceed against Defendant SRI. Plaintiffs' counsel should notify the other individuals who submitted consent forms, [*see, e.g.*, dkt. 12-1 at 4-19], that any claims they may have against SRI are not being pursued in this action.

11/03/2010

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only</u>:**

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Jesse S. Brar
LAW OFFICE OF JESSE BRAR
jesse.brar@gmail.com

Philip John Gutwein II
BAKER & DANIELS - Indianapolis
philip.gutwein@bakerd.com

Mick G. Harrison
mickharrisonesq@earthlink.net

Sharon L. Preston
ATTORNEY AT LAW
sharon.preston@yahoo.com

Rudolph William Savich
rsavich@aol.com

David S. Wagner
BAKER & DANIELS, LLP
david.wagner@bakerd.com